John Richards *(Pro Hac Vice Pending)*
John.Richards@gtlaw.com
GREENBERG TRAURIG, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone: 617.310.6000
Facsimile: 617.310.6001

Tonya Esposito *(Admitted Pro Hac Vice)*
Tonya.Esposito@gtlaw.com
GREENBERG TRAURIG, LLP
2101 L St. NW, Suite 1000
Washington, D.C. 20037
Telephone: 202.231.3100
Facsimile: 202.231.3101

Brian C. Gee (SBN CA 317436)
geeb@gtlaw.com
GREENBERG TRAURIG, LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: 650.328.8500
Facsimile: 650.328.8508

Attorneys for Defendant
ABERCROMBIE & FITCH STORES, INC., d/b/a WWW.HOLLISTERCO.COM
(erroneously sued as ABERCROMBIE & FITCH TRADING CO. d/b/a
WWW.HOLLISTER.COM)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

1  REBEKA RODRIGUEZ,
   individually and on behalf of all
2  others similarly situated,

3          Plaintiff,

4  v.

5  ABERCROMBIE & FITCH
   TRADING CO., an Ohio
6  Corporation, d/b/a
   WWW.HOLLISTER.COM,
7
           Defendant.
8

Case No. 3:25-cv-01890-JES-DEB

**DEFENDANT ABERCROMBIE &
FITCH STORES, INC.'S NOTICE OF
MOTION AND MOTION TO COMPEL
ARBITRATION, DISMISS CLASS
CLAIMS, AND STAY ACTION**

Hearing Date: October 8, 2025
Hearing Time: 9:00 AM
Location: Courtroom 4B

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION
AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND
STAY ACTION

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on October 8, 2025, at 9:00 a.m., in Courtroom 4B of the above-captioned Court, located at 221 West Broadway, San Diego, CA 92101, Defendant Abercrombie & Fitch Stores, Inc. d/b/a www.hollisterco.com (erroneously sued as Abercrombie & Fitch Trading Co. d/b/a www.hollister.com) ("Abercrombie")[1] will move, and hereby does move, this Court for an order compelling Plaintiff Rebeka Rodriguez's ("Rodriguez") claims to arbitration (on an individual basis), dismissing her class claims, and staying this action pending the outcome of arbitration (the "Motion").

Rodriguez agreed to arbitrate her claims when she made a transaction on www.hollisterco.com (the "Website").[2] During the transaction, she was notified that by placing her order or creating her account, she was agreeing to the Website's sale terms (the "Sale Terms"), which contain an arbitration provision. The Sale Terms were accessible through a hyperlink next to the button she clicked to complete her transaction. By clicking that button, Rodriguez affirmatively accepted the Sale Terms, including the arbitration agreement.

The broad arbitration agreement encompasses: "(1) any dispute or claim that arose before the existence of this or any prior Agreement (including, but not limited to, claims relating to advertising); (2) any dispute or claim that is currently the subject of purported class action litigation in which you are not a member of a certified class; and (3) any dispute or claim that may arise after the cancelation or expiration of this Agreement."

---

[1] The Complaint names Abercrombie as the defendant and states, "Defendant advertises fictitious regular prices (and corresponding phantom discounts) on products sold through its website at www.hollister.com (the 'Website')." (Compl. at 1.) However, Abercrombie actually operates www.hollisterco.com. The company that operates www.hollister.com is not associated with Abercrombie.

[2] Abercrombie refers to the Website that Plaintiff describes in her Complaint, but it assumes for the purpose of this Motion that Plaintiff actually made her purchase at www.hollisterco.com. To the extent Plaintiff insists her purchase was made at www.hollister.com then Abercrombie will later move to dismiss under Federal Rule of Civil Procedure 12 for failure to state a claim and failure to join a party.

1

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

(Declaration of Lauren Morr ("Morr Decl."), Ex. A at 10.) All of Rodriguez's claims are based on the allegation that the reference price reflected on the Website was not the "prevailing market price" in the 90 days preceding Rodriguez's transaction.[3] That theory falls within the arbitration agreement's scope. And under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, the Court should compel arbitration. In addition, the Court should dismiss Rodriguez's class claims and stay this action pending the outcome of arbitration.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Lauren Morr, all pleadings and filings, all matters of which this Court may take judicial notice, and upon such other oral or documentary evidence as may be presented to the Court at or before the hearing on this Motion.

The counsel below hereby certifies that meet-and-confer efforts have been exhausted. Counsel for both parties met and conferred via telephone on August 15, 2025, at which time counsel for Abercrombie explained the factual and legal basis for Abercrombie's Motion. Declaration of Tonya Esposito ¶ 2. The parties have discussed potential resolutions of both this Motion and the underlying dispute. *Id.* The parties could not reach a resolution. *Id.*


Dated:  August 26, 2025                    GREENBERG TRAURIG, LLP

                                                        By:     */s/ Tonya Esposito*
                                                                  John Richards
                                                                  Tonya Esposito
                                                                  Brian Gee
                                                                  Attorneys for Defendant Abercrombie & Fitch
                                                                  Stores, Inc., d/b/a www.hollisterco.com
                                                                  (erroneously sued as Abercrombie & Fitch
                                                                  Trading Co. d/b/a www.hollister.com

---

[3] Abercrombie acknowledges Rodriguez's allegations, but disagrees that it "discounted" the price as opposed to placing the merchandise at issue on clearance, which changed its price.

2

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

# <u>TABLE OF CONTENTS</u>

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 8

I.      INTRODUCTION .................................................................................................... 8

II.     FACTUAL ALLEGATIONS AND BACKGROUND ............................................ 9

    A.      Rodriguez's Claims Arise Out of Her Transaction on the Website. ...................... 9

    B.   Rodriguez Assented to the Arbitration Agreement. .......................................... 9

    C.   The Sale Terms Contain a Binding Arbitration Provision. .............................. 10

III.    ARGUMENT .......................................................................................................... 12

    A.      The Supreme Court Has Held That Courts Must Enforce Arbitration Agreements. ........................................................................................................ 12

    B.   Rodriguez Agreed to Arbitrate Her Claims. .................................................. 13

        1. ........... Rodriguez Agreed to Arbitrate Her Claims When She Made the Purchase Alleged in Her Complaint. ..................................................................... 15

    C.   Rodriguez Also Must Arbitrate Based on Estoppel Principles. ...................... 18

    D.      Rodriguez's Claims Fall within the Arbitration Agreement. ......................... 20

    E.   Rodriguez Can Only Proceed on Her Individual Claims and the Class Claims Should Be Dismissed. ................................................................................... 21

    F.   This Action Should Be Stayed Pending Arbitration. ...................................... 22

IV.     CONCLUSION ...................................................................................................... 22

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION
AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND
STAY ACTION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allen v. Shutterfly, Inc.*,
2020 U.S. Dist. LEXIS 167910 (N.D. Cal. Sept. 14, 2020) .......................................17

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)........................................................................................12, 20

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).................................................................................12, 21, 22

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .........................................................15, 16, 18

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ......................................................................12

*Bulnes v. Suez WTS Servs. USA, Inc.*,
No. 22-CV-1154-BAS-AHG, 2023 WL 3262938 (S.D. Cal. May 4,
2023) ...........................................................................................................21

*Carwile v. Samsung Telecomms. Am., LLC*,
2013 WL 11030374 (C.D. Cal. July 9, 2013)...................................................19

*Chabolla v. Classpass, Inc.*,
129 F.4th 1147 (9th Cir. 2025) .....................................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ......................................................................13

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)........................................................................................12

*Crawford v. Beachbody, LLC*,
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014).....................................................14

*Davis v. Nordstrom, Inc.*,
755 F.3d 1089 (9th Cir. 2014) ......................................................................13

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION
AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND
STAY ACTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Dohrmann v. Intuit, Inc.*,
　823 F. App'x 482 (9th Cir. 2020).............................................................13, 14

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018)............................................................12, 21, 22

*Farfan v. SSC Carmichael Operating Co. LP*,
　No. 18-CV-01472-HSG, 2019 WL 4933577 (N.D. Cal. Oct. 7, 2019).....................21

*Ferguson v. Corinthian Colls., Inc.*,
　733 F.3d 928 (9th Cir. 2013) ............................................................12, 20

*First Options of Chicago, Inc. v. Kaplan*,
　514 U.S. 938 (1995).............................................................................13

*Henry Schein, Inc., et al. v. Archer & White Sales, Inc.*,
　139 S. Ct. 524 (2019)...........................................................................13

*Karim v. Best Buy Co.*,
　2023 U.S. Dist. LEXIS 96619 (N.D. Cal. June 2, 2023).............................17

*Kilgore v. KeyBank, N.A.*,
　673 F.3d 947 (9th Cir. 2012), *reversed and remanded on other grounds*,
　718 F.3d 1052 (9th Cir. 2013) ..................................................................22

*Kseniya Godun v. JustAnswer LLC*,
　135 F.4th 699 (9th Cir. 2025)..................................................................17

*Lee v. Ticketmaster L.L.C.*,
　817 F. App'x 393 (9th Cir. 2020) ............................................................14, 15

*Leyva v. Certified Grocers of Cal. Ltd.*,
　593 F.2d 857 (9th Cir. 1979) ..................................................................22

*Meyer v. Uber Techs., Inc.*,
　868 F.3d 66 (2d Cir. 2017) ....................................................................14, 15

*Montoya v. Comcast Corp.*,
　2016 U.S. Dist. LEXIS 130806 (E.D. Cal. Sep. 22, 2016) ...........................19, 20

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
　460 U.S. 1 (1983).................................................................................12

5

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................14

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010), The FAA ........................................................................12

*Riley v. Medline Indus.*,
    2020 U.S. Dist. LEXIS 186330 (E.D. Cal. Oct. 6, 2020).................................13

*Sauer v. Experian Info. Sols., Inc.*,
    2022 WL 2163016 (C.D. Cal. May 12, 2022)..................................................20

*Smorowski v. Domino's Pizza LLC*,
    2021 WL 4440167 (C.D. Cal. July 23, 2021)...................................................20

*Stiner v. Brookdale Senior Living, Inc.*,
    810 F. App'x 531 (9th Cir. 2020) ....................................................................18

*Vikram Singh v. Adobe Inc.*,
    2025 U.S. Dist. LEXIS 148782 (N.D. Cal. Aug. 1, 2025) ......................17, 18

*Yun Park v. MSX Americas, Inc.*,
    No. 819CV01487JLSKES, 2019 WL 5285446 (C.D. Cal. Oct. 9, 2019).................21

**State Cases**

*B.D. v. Blizzard Entm't, Inc.*,
    76 Cal. App. 5th 931 (2022) ......................................................................13, 14

*Boucher v. All. Title Co., Inc.*,
    127 Cal. App. 4th 262 (2005) ....................................................................18, 19

*Felisilda v. FCA US LLC*,
    53 Cal. App. 5th 486 (2020) ..........................................................................19

*Iskanian v. CLS Transp. Los Angeles, LLC*,
    59 Cal. 4th 348 (2014) .....................................................................................21

*JSM Tuscany, LLC v. Superior Court*,
    193 Cal. App. 4th 1222 (2011) ........................................................................18

**Statutes**

9 U.S.C. § 3 ................................................................................................................22

6

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION
AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND
STAY ACTION

CLRA and Unfair Competition Law ...................................................................18

Federal Arbitration Act .................................................................................21

Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.........................................2

Federal Arbitration Act (FAA) .....................................................................12

**Rules**

Federal Rule of Civil Procedure 12 ...............................................................1

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Rebeka Rodriguez ("Rodriguez") filed a putative class action in California state court alleging that she bought a "Short-Sleeve Crew Baby Tee" (the "Product") on www.hollisterco.com (the "Website") for the "discounted" price of $6.99 compared to the "strike-through" reference price of $14.95, which she alleges "was not the 'prevailing market price' in the 90 days preceding the above access date." Rodriguez agreed to arbitrate her claims upon completing the transaction. The Court should compel Rodriguez's claims to arbitration for the following reasons, dismiss her class claims, and stay this case pending arbitration.

***First***, Defendant Abercrombie & Fitch Stores, Inc. d/b/a www.hollisterco.com (erroneously sued as (erroneously sued as Abercrombie & Fitch Trading Co. d/b/a www.hollister.com) ("Abercrombie") provided conspicuous notice of the Website's sale terms ("Sale Terms") for the Website, which Rodriguez agreed to. When making her purchase, Rodriguez clicked a "Submit Order" button paired with notice that "[b]y submitting my order, I agree to be bound by the terms and policies linked above." Courts in the Ninth Circuit and across the country have found that similar checkout procedures form binding arbitration agreements, and the Court should reach the same conclusion here.

***Second***, all arbitrability questions—except issues about the scope or enforceability of the arbitration agreement—have been delegated to the arbitrator. Broad arbitration agreements like the one here that refer "any" "disputes" to arbitration and incorporate the American Arbitration Association rules delegate all questions to the arbitrator.

***Finally***, the language of the arbitration agreement is broad and covers Rodriguez's claims.

Because Rodriguez agreed to binding arbitration, the Court should grant this motion, compel Rodriguez to arbitrate her claims, dismiss the class claims, and stay this action.

8

## II.  **FACTUAL ALLEGATIONS AND BACKGROUND**

### A.    **Rodriguez's Claims Arise Out of Her Transaction on the Website.**

Rodriguez alleges she visited the Website and bought a "Short-Sleeve Crew Baby Tee" (hereafter, the "Product") on March 4, 2025, for the "discounted" price of $6.99.[4] (Compl. ¶ 8.) Rodriguez alleges that the "strike-through" reference price of $14.95 "was not the 'prevailing market price' in the 90 days preceding the above access date." (*Id.* at ¶¶ 8-9.) Based on that allegation, Rodriguez asserts claims: (1) under California's False Advertising Law ("CFAL"); and (2) under California's Consumer Legal Remedies Act ("CLRA").

### B.    **Rodriguez Assented to the Arbitration Agreement.**

Rodriguez allegedly completed her purchase on the Website on March 4, 2025. (Compl. ¶ 8.) During the purchase, Rodriguez agreed to the Sale Terms. (Declaration of Jeremy Morr ("Morr Decl."), ¶¶ 4-12.) A true and correct copy of the checkout page on the Website is as follows:



---

[4] Abercrombie acknowledges Rodriguez's allegation that the Product was "discounted," but disagrees that the item was discounted at all. Instead, the Product and the similar merchandise referenced in the Complaint were placed on clearance and the price was reduced accordingly as demonstrated by the images in the Complaint. (Compl. ¶ 9.)

9

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

(Morr Decl. ¶ 9.)

As part of each checkout process, Rodriguez entered and reviewed her purchase request, payment, and shipping information. (*Id.* ¶¶ 5-8.) To complete the purchase, she needed to click the "Submit Order" button. (Morr Decl. ¶ 8.) Paired with and directly above the "Submit Order" button, Rodriguez was informed that "[b]y submitting my order, I agree to be bound by the terms and policies linked above." (*Id.* ¶ 9.) On the Website, the words "Updated Sales Terms" were underlined and hyperlinked so that customers could review the Sale Terms before completing the purchase. (*Id.*) The Sale Terms include a mandatory arbitration agreement. (*See Id.* ¶ 14, Ex. A.)

Thus, "[b]y submitting my order," Rodriguez "agree[d] to" the Website's Sale Terms, including the arbitration agreement. (*Id.* ¶ 9.)

## C.    The Sale Terms Contain a Binding Arbitration Provision.

The Sale Terms included a mandatory arbitration provision. (Morr Decl. ¶ 15.) The provision has changed over time, but the substantive language relevant to this Motion has remained the same since July 2023. (*Id.*) The Sale Terms begins by providing a notice in bold letters near the top of the page:

> These Sale Terms contain a mandatory dispute resolution provision that includes a binding arbitration provision, class action waiver, and jury trial waiver that affect your rights. The dispute resolution provision requires that disputes be resolved in individual arbitration or small claims court proceedings. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court. Please review carefully.

(*Id.* ¶ 14, Ex. A (current Sale Terms in effect when Rodriguez made the purchase discussed above).) The section of the Sale Terms, titled "Dispute Resolution (including informal dispute resolution process; arbitration provision; class action waiver; jury trial waiver; governing law and forum)" contains a mandatory arbitration provision: "Any Dispute between you and HCo that is not resolved as set forth above will be resolved

10

through binding individual arbitration, except that either of us may take a Dispute to small claims court so long as it isn't removed or appealed to a court of general jurisdiction." (*Id.*, Ex. A at 12.)

As a condition of using the Website, Rodriguez agreed that any and all "disputes," as defined the Sale Terms, "including but not limited to: (1) any dispute or claim that arose before the existence of this or any prior Agreement (including, but not limited to, claims relating to *advertising*)[,]" (emphasis added) "shall be heard and determined by a single arbitrator and be administered by the American Arbitration Association ('AAA') pursuant to its Consumer Arbitration Rules (collectively the 'AAA Rules') as modified by the version of this arbitration provision that is in effect when notice of a Dispute is given." (*Id.*, Ex. A at 10 and 12.)

The Sale Terms include an explicit waiver of both jury trials and class actions as follows:

"You and HCo waive the right to a jury trial to the fullest extent permitted by applicable law."

"You and HCo agree that any proceeding, whether in arbitration or litigation, will be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action. You and we agree to waive any right to bring or participate in such an action in arbitration or in court to the fullest extent permitted by applicable law."

(*Id.*, Ex. A at 17.)

The Sale Terms define "HCo" as "Abercrombie & Fitch Stores, Inc., and any of its past, present, or future subsidiaries, parents, affiliates, assigns, or vendors and independent contractors, and each of their officers, directors, employees and agents." *Id.*, Ex. A at 11.) Thus, when a customer like Rodriguez makes a purchase, she agrees that "Any Dispute between you and HCo that is not resolved as set forth above will be resolved through binding individual arbitration[.]" (*Id.* at 12.)

11

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

### III.  **ARGUMENT**

#### A.    **The Supreme Court Has Held That Courts Must Enforce Arbitration Agreements.**

The "liberal federal policy favoring arbitration agreements" under the Federal Arbitration Act (FAA) creates a strong presumption in favor of enforcement, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms" to facilitate streamlined proceedings. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).[5] "Not only did Congress require courts to respect and enforce agreements to arbitrate, it also specifically directed them to respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp.*, 138 S. Ct. at 1621; *see also Rent-A-Center*, 561 U.S. at 67-69 (enforcing delegation provision for arbitrator to decide "gateway" issues "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

In deciding a motion to compel arbitration, a court's role is to determine: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citations omitted). "If the response is affirmative on both counts, then the [FAA]

---

[5] The FAA governs an agreement to arbitrate where, as here, the economic activity of one of the parties has a nexus to interstate commerce. *Citizens Bank v. Alafabco, Inc*., 539 U.S. 52, 57–58 (2003) (holding that neither the parties' agreement nor underlying transaction need be "in" interstate commerce; rather, the *economic activity* of the parties must have some nexus to interstate commerce). The arbitration agreement here relates to a website operated and maintained by Abercrombie, a Delaware corporation, and used by Rodriguez to make purchases from California.

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (stating that the FAA "leaves no place for the exercise of discretion by a district court"). "[T]he Supreme Court has recognized that parties can agree to arbitrate "gateway" questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Riley v. Medline Indus.*, 2020 U.S. Dist. LEXIS 186330, at *4 (E.D. Cal. Oct. 6, 2020) (internal quotation marks and citations omitted)); *see also Henry Schein, Inc., et al. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("[I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."); *Chiron Corp.*, 207 F.3d at 1130 (stating that the FAA "leaves no place for the exercise of discretion by a district court").

Rodriguez is bound by the arbitration agreement, which delegates arbitrability issues to the arbitrator. And even if the Court were to address arbitrability, Rodriguez's claims fall within the arbitration agreement. Thus, the arbitration agreement must be enforced, and Abercrombie's Motion should be granted.

**B.     Rodriguez Agreed to Arbitrate Her Claims.**

"[O]rdinary state-law principles" govern the formation analysis. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *accord Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) ("When determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that govern contract formation."). Even for online transactions, formation "is determined under an objective standard applied to . . . the reasonable meaning of [the parties'] words and acts[.]" *B.D. v. Blizzard Entm't, Inc.*, 76 Cal. App. 5th 931, 943 (2022) ("*Blizzard*"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) ("The internet has not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." (internal quotation marks and citation omitted)).

13

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

"[A] manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons[.]" *Blizzard*, 76 Cal. App. 5th at 944. "[C]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract, and that there is nothing automatically offensive about such agreements, as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (applying California law) (citation and quotation omitted).

Courts regularly enforce arbitration agreements formed under circumstances nearly identical to those here. *See, e.g.*, *Dohrmann*, 823 F. App'x at 484 (enforcing arbitration agreement where language below "Sign In" button informed users that by signing in, they agreed to the terms); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020) ("To complete the process and place an order, they clicked a 'Sign Up' button . . . [] Directly below that button was a statement reading: 'By tapping Sign Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement'"). For example, in *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020), the court found that the plaintiff assented to terms of use and an arbitration provision when he clicked a "Sign In" button, "where three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use[.]'"[6] As shown below, the Website provides even more conspicuous notice than that in *Lee*, as it explains directly above the buttons that placing an order constitutes assent to the Sale Terms, and Rodriguez assented by placing her order.

---

[6] *See also Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *2-3 (S.D. Cal. Nov. 5, 2014) (enforcing terms of website where, at the final step of placing an order, webpage stated that "by clicking Place Order below, you are agreeing" to the website's terms).

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

### 1. Rodriguez Agreed to Arbitrate Her Claims When She Made the Purchase Alleged in Her Complaint.

Rodriguez's claims are based on a March 4, 2025 transaction on the Website. (Compl. ¶ 8.) On the Website's check-out screen, Rodriguez received conspicuous notice that, by placing her order, she was agreeing to the Sale Terms. (Morr Decl. ¶ 9.) Several facts confirm Rodriguez's assent to the Sale Terms. First, the notice that Rodriguez was agreeing to the Sale Terms was directly above the "Submit Order" button and within her line of sight when she clicked the button. (*Id.*) Second, the text informed Rodriguez that "[b]y submitting my order, I agree to be bound by the terms and policies linked above." (*Id.*) Third, the Sale Terms were called out by underlined font. (*Id.*) And fourth, the phrase "Updated Sales Terms" was hyperlinked, providing direct access to the full terms. (*Id.*) A reasonable consumer "knows that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found." *Meyer*, 868 F.3d at 77–78. The hyperlink was not "buried in fine print." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). It was directly above the button Rodriguez clicked to place her order (Morr Decl. ¶ 9), so she had notice of the Sale Terms.[7] By placing her order, Rodriguez agreed to the Sale Terms. *See Berman* at 858 (explaining that notice must "indicate to the user what action would constitute assent to those terms and conditions").

The Sale Terms are an enforceable contract pursuant to the law of the Ninth Circuit. The Ninth Circuit has held:

> [A]n enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the

---

[7] A person "cannot avoid the terms of [the] contract on the ground that he . . . failed to read it" before communicating assent. *Lee*, 817 F. App'x at 395 (holding that plaintiff was bound to arbitrate even if he declined to read the terms because, for each purchase, he was told that by clicking the button and placing the order, he was agreeing to the terms of use) (quoting *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001)).

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

> consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856. Here, the Sale Terms Rodriguez agreed to are enforceable because Abercrombie provided reasonably conspicuous notice of the terms and Rodriguez was required to take an action to manifest her assent to those terms by clicking the "Submit Order" button.

The internet contract at issue here is most closely analogous to a "sign-in wrap agreement," which has been held to be enforceable in circumstances like those presented in this case. *See Chabolla v. Classpass, Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (explaining the differences between the four types of internet contracts: browsewrap, clickwrap, scrollwrap, and sign-in wrap).

<u>Reasonably Conspicuous Notice</u>

"To be conspicuous, [the] notice 'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Chabolla*, 129 F.4th at 1155 (quoting *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024)). Whether a notice is conspicuous is determined by the "context of the transaction" as well as the "traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design." *Id.* In this context, the Court should find that Rodriguez had reasonably conspicuous notice of the Sales Terms.

The Complaint alleges that Rodriguez made a one-time purchase of the Product on the Website. (Compl. ¶ 8.) Therefore, in the context of the one-time transaction at issue a reasonably prudent user would have less reason to believe that the relationship is bound by terms because there is not an expectation of a continued relationship between the parties. *Chabolla*, 129 F.4th at 1155 ("[W]hen a user simply purchases goods or avails herself of a one-time discount offer, there is less reason for her to expect a continued

16

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

relationship beyond the purchase.") Regardless, where, as here, the visuals involved with the notice, including hyperlinks above buttons for making one-time purchases, weigh in favor of finding conspicuous notice courts have consistently found this provides sufficiently conspicuous notice of contract formation. *See Karim v. Best Buy Co.*, 2023 U.S. Dist. LEXIS 96619, at *11 (N.D. Cal. June 2, 2023) ("While Karim stresses that he intended only to make a one-time purchase, courts have consistently held that hyperlinks above buttons for making one-time purchases have provided sufficiently conspicuous notice."); *see also Allen v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 167910, at *27 (N.D. Cal. Sept. 14, 2020) (compelling arbitration where a customer was presented with a terms and conditions hyperlink placed above a "Submit Payment" button when purchasing school portraits.) As a result, the Court should rule consistently with other courts within the Ninth Circuit and find that Rodriguez was provided with reasonably conspicuous notice of the Sale Terms despite only making a one-time purchase as opposed to having a continuing relationship with Abercrombie.

<u>Manifestation of Assent</u>

"The second step of the inquiry-notice internet contract formation test asks us to consider whether any action taken by the internet user—such as clicking a button or checking a box—'unambiguously manifest[ed] his or her assent' to proposed contractual terms." *Kseniya Godun v. JustAnswer LLC*, 135 F.4th 699, 710 (9th Cir. 2025). Here, Abercrombie's checkout page includes text directly above the "Submit Order" button stating, "[b]y submitting my order, I agree to be bound by the terms and policies linked above." (Morr Decl. ¶ 9.) These terms and policies included the Sale Terms. Courts in the Ninth Circuit have held recently that this is precisely the type of manifestation of assent necessary to bind a purchaser to sales terms. *See Vikram Singh v. Adobe Inc.*, 2025 U.S. Dist. LEXIS 148782, at *17-18 (N.D. Cal. Aug. 1, 2025) (holding that Adobe's checkout pages that included text directly above the "Agree and subscribe" button stating "By clicking 'Agree and subscribe,' . . . [y]ou also agree to the Terms of Use and the

17

Subscription and Cancellation Terms" was precisely the type of language *Berman* said would be sufficient to unambiguously manifest assent). Given the factual similarity between the purchase in *Vikram Singh* and Rodriguez's purchase from the Website, the Court should find that Rodriguez similarly manifested consent to the Sale Terms when she clicked "Submit Order."

### C.    Rodriguez Also Must Arbitrate Based on Estoppel Principles.

California has adopted the doctrine of equitable estoppel as a basis to compel arbitration. *See Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 268 (2005) (explaining that there are several grounds "pursuant to which an arbitration clause can be enforced," including "estoppel"). Under this doctrine, Rodriguez must arbitrate because she sued Abercrombie based on a contract that requires arbitration, and she knowingly benefited from that contract.

"Under California law, a litigant may not assert claims based on a contract while simultaneously arguing that an arbitration clause in that contract is ineffective.'" *Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531, 534 (9th Cir. 2020) (compelling arbitration of CLRA and Unfair Competition Law claims) (citations omitted); *see also JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1239-40 (2011) ("When a plaintiff brings a claim which *relies on contract terms* against a defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause contained in that agreement.") (emphasis in original; citations omitted); *Boucher*, 127 Cal. App. 4th at 272 ("The focus is on the nature of the claims asserted . . . . That the claims are cast in tort rather than contract does not avoid the arbitration clause."). But this is exactly what Rodriguez is trying to do. She alleges she purchased the Product through the Website and that Abercrombie wrongfully displayed a "discounted" price based on a "strike-through" reference price that was not the "'prevailing market price' in the 90 days preceding the above access date." (Compl. ¶¶ 8-9.) The alleged contract and the Sale Terms are the same because the Sale Terms state, "[b]y purchasing merchandise . . . you agree to be bound by

18

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION<br>AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND<br>STAY ACTION

these terms and conditions." (Morr Decl., Ex. A at 1.) The Sale Terms also explain that "If you have ordered merchandise via, or otherwise used or accessed, the HCo Website, then your use of the HCo Website is subject to the <u>Website Terms of Use</u>." (*id.*, Ex. A at 19.) Because Rodriguez's claims seek to enforce the parties' agreement, she cannot repudiate the arbitration provision in that agreement. *See*, *e.g.*, *Carwile v. Samsung Telecomms. Am., LLC*, 2013 WL 11030374, at *3 (C.D. Cal. July 9, 2013) (the consumer "may not, after the fact, pick and choose the terms she wishes to be bound by, depending on whether she likes the end result").

Rodriguez also cannot disavow the arbitration agreement because she already benefited from the Sales Term — through her use of the Website to receive a reduced price on the purchase singled out in the Complaint. "The Ninth Circuit has repeatedly expressed that equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Montoya v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 130806, at *11 (E.D. Cal. Sep. 22, 2016) (internal quotation marks and citation omitted).[8] In *Montoya*, the court held that the plaintiffs were estopped from avoiding arbitration with their cable and internet provider because they used the provider's standard services and "actively . . . ask[ed] for additional security measures when they felt their personal information had been compromised." *Id.* at *8. Based on that conduct, the court held that "by knowingly exploiting the agreement and accepting the benefits of the contract, Plaintiffs cannot avoid the obligations of that contract. . . . Whether or not the Plaintiffs actually read the services contract or arbitration

---

[8] "The application of equitable estoppel principles to arbitrability questions arises in a variety of circumstances. For example . . . : '[a] party may be estopped from asserting that the lack of his [or her] signature on a written contract precludes enforcement of the contract's arbitration clause when he [or she] has consistently maintained that other provisions of the same contract should be enforced to benefit him [or her].'" *Boucher*, 127 Cal. App. 4th at 268-69 (citations omitted); *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486, 496 (2020) ("'The fundamental point' is that a party is 'not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved.'" (citations omitted)).

19

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

agreement is irrelevant." *Id.* at *5. Rodriguez similarly benefited from her contract with Abercrombie by purchasing an item on clearance—which reduced the amount of money she had to pay to make the purchase—and those benefits were governed by the same Sale Terms containing the arbitration agreement. (*See* Morr Decl., Ex. ¶ 16.) Thus, Rodriguez cannot avoid the obligation to arbitrate her claims.

### D.    Rodriguez's Claims Fall within the Arbitration Agreement.

The arbitration agreement covers all of Rodriguez's claims because they relate to her use of the Website. Courts broadly construe provisions requiring arbitration of "all disputes" "arising" from the parties' dealings, including a plaintiff's use of the defendant's webpage to make purchases. *See*, *e.g.*, *Sauer v. Experian Info. Sols., Inc*., 2022 WL 2163016, at *1 (C.D. Cal. May 12, 2022) (enforcing arbitration agreement in terms of use covering disputes and claims "arising out of this Agreement" and "related to the Services or Websites"); *Smorowski v. Domino's Pizza LLC*, 2021 WL 4440167, at *2 (C.D. Cal. July 23, 2021) (enforcing arbitration agreement in website's terms of use covering "ANY CLAIM, DISPUTE, AND/OR CONTROVERSY ARISING OUT OF OR RELATING IN ANY WAY TO YOUR USE OF THE WEB SITES OR THE APPLICATIONS . . . .").[9] The arbitration agreement here covers "Any Dispute between you and HCo . . ." (Morr Decl., Ex. A at 12.) Rodriguez's claims about reference pricing directly arise from her online purchase through the Website (Compl. ¶¶ 8-9), so her claims fit within the parties' arbitration agreement and should be compelled to arbitration.[10]

---

[9] *See also Ferguson*, 733 F.3d at 938 (recognizing that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and holding that terms in enrollment agreement requiring arbitration of "any dispute" and "all claims" "arising from my enrollment" covered claims that school misrepresented value and cost of an education (internal quotation marks and citation omitted)).

[10] The Sales Terms and arbitration agreement also contain a class-action waiver, requiring any claims to "be resolved individually." (Morr Decl., Ex. A at 17.) Thus, the Court should compel Rodriguez to arbitrate on an individual basis. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237-238 (2013) (arbitration agreements with class action waivers are enforceable).

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

## E. Rodriguez Can Only Proceed on Her Individual Claims and the Class Claims Should Be Dismissed.

As explained above, Rodriguez must arbitrate her dispute with Abercrombie on an individual basis. Because she must arbitrate her claims, she cannot serve as class representative here. *See Farfan v. SSC Carmichael Operating Co. LP*, No. 18-CV-01472-HSG, 2019 WL 4933577, at *3 (N.D. Cal. Oct. 7, 2019) ("Plaintiffs do not explain how they can pursue class claims as representative plaintiffs when they are required to arbitrate their own claims, and the Court is aware of no authority that would permit this result."); *Bulnes v. Suez WTS Servs. USA, Inc.*, No. 22-CV-1154-BAS-AHG, 2023 WL 3262938, at *23 (S.D. Cal. May 4, 2023) ("Given this Court's decision to grant [Defendant's] request to compel arbitration, [Plaintiff] cannot continue to serve as class representative of the putative class."); *Yun Park v. MSX Americas, Inc.*, No. 819CV01487JLSKES, 2019 WL 5285446, at *5 (C.D. Cal. Oct. 9, 2019) (same).

Moreover, the Sale Terms contain a class action waiver. In the Sale Terms, both Rodriguez and Abercrombie agreed that "You and HCo agree that any proceeding, whether in arbitration or litigation, will be conducted only on an individual basis and not in a class, collective, consolidated, private attorney general, or representative action. You and we agree to waive any right to bring or participate in such an action in arbitration or in court to the fullest extent permitted by applicable law." (Morr Decl., Ex. A at 17.)

The enforceability of class action waivers cannot be disputed. In *Epic Sys. Corp. v. Lewis*, the U.S. Supreme Court reaffirmed the validity and enforceability of class action waivers in arbitration agreements. 584 U.S. 497, 502 (2018) ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms providing for individualized proceedings."); *see also Concepcion*, 563 U.S. at 341 (recognizing that class waiver provisions are enforceable under the FAA, which preempts any state laws invalidating class waivers); *Iskanian v.*

21

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

*CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (holding that class action waivers in arbitration agreements are permissible under California law).

The FAA requires that the Court enforce the parties' agreement according to its terms, including the class action waiver. Therefore, under *Epic* and *Concepcion*, the Court should grant Abercrombie's Motion, order Rodriguez to submit her individual claims to arbitration, and dismiss her class claims.

### F.    This Action Should Be Stayed Pending Arbitration.

The FAA provides that "the court . . . upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . <u>shall</u> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3 (emphasis added). Under this provision, a "federal case must be stayed while the parties proceed to arbitration." *Kilgore v. KeyBank, N.A.*, 673 F.3d 947, 965 (9th Cir. 2012), *reversed and remanded on other grounds*, 718 F.3d 1052 (9th Cir. 2013). This rule exists because it "would waste judicial resources . . . if the district court . . . were mandated to permit discovery, . . . take evidence and determine the merits of the case at the same time as the arbitrator is going through a substantially parallel process." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979). For these reasons, the Court should compel arbitration of Rodriguez's claims and stay the lawsuit.

## IV.    CONCLUSION

Rodriguez agreed to arbitration when she assented to the Sale Terms by making a purchase on the Website. Rodriguez also is bound by principles of equitable estoppel because she reaped the benefits of the contract through her use of Hollister discounts, and she is now suing on that same contract. Her claims fall within the scope of the arbitration agreement. Thus, Abercrombie requests that the Court grant this Motion, compel Rodriguez to arbitrate her claims on an individual basis, and stay this action pending arbitration.

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY ACTION

Dated:  August 26, 2025                    GREENBERG TRAURIG, LLP

                                      By:    /s/ *Tonya Esposito*
                                             Tonya Esposito
                                             John Richards
                                             Brian Gee
                                             Attorneys for Defendant Abercrombie & Fitch
                                             Stores, Inc., d/b/a www.hollisterco.com
                                             (erroneously sued as Abercrombie & Fitch
                                             Trading Co. d/b/a www.hollister.com)

23

DEFENDANT ABERCROMBIE & FITCH STORES, INC.'S NOTICE OF MOTION
AND MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND
STAY ACTION