UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBEKA RODRIGUEZ, individually and on behalf all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ABERCROMBIE & FITCH TRADING CO. d/b/a WWW.HOLLISTER.COM,<br><br>Defendant. | Case No.: 25-cv-1890-JES-DEB<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO COMPEL ARBITRATION;**<br><br>**(2) DENYING MOTION TO DISMISS CLASS CLAIMS; and**<br><br>**(2) DENYING MOTION TO STAY ACTION**<br><br>**[ECF No. 12]** |

Before the Court is a motion by Defendant Abercrombie & Fitch Trading Co., doing business as www.hollister.com, ("Defendant") to compel Plaintiff and putative class representative Rebeka Rodriguez ("Plaintiff") to submit her claims to arbitration. ECF No. 12 ("Mot.") Plaintiff filed an opposition to this motion (ECF No. 13 ("Opp'n.")), and Defendant filed a reply (ECF No. 33 ("Reply")). Defendant also moves to dismiss Plaintiff's class claims and stay this action. Mot. at 23-24. For the reasons set forth below,

the Court finds that there is no enforceable arbitration agreement in this matter and **DENIES** Defendant's motions.

## I.   BACKGROUND

Defendant operates the website www.hollisterco.com ("the Website"), an online store where people can buy products like the "Short-Sleeve Crew Baby Tee" ("the Product"). Compl. ¶¶ 6, 8-9. Plaintiff purchased the Product on March 4, 2025, for $6.99. *Id.* ¶ 8. On that day, Plaintiff alleges that the Website showed a "strike-through" price of $14.95, representing that the lower price was a discount from that price. *Id.* Plaintiff alleges that the discount was false, deceptive, and intended to induce purchases from buyers relying on an artificially inflated price. *Id.* ¶¶ 9-10.

Plaintiff brings this action under California consumer protection law on behalf of herself and a putative class. *Id.* ¶¶ 22-46. The class she seeks to represent consists of "All persons who purchased any product from Defendant's Website while in California at a purported discount from a higher reference price." *Id.* ¶ 22. She alleges violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17501, and California's Consumer Legal Remedies Act, Cal. Civil Code § 1750 et seq. *Id.* ¶¶ 30-46.

## II.   LEGAL STANDARD

Agreements "evidencing a transaction involving commerce" are subject to the Federal Arbitration Act ("FAA"). *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing 9 U.S.C. § 2). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. If the district court finds a party has failed to comply with a valid arbitration agreement, it must issue an order compelling arbitration. *Id.*

25-cv-1890-JES-DEB

Under the FAA, the court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130. "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* Courts must apply ordinary state law principles in determining the validity of an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). Accordingly, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339-41 (2011).

"[P]arties cannot delegate issues of formation to the arbitrator." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021). However, "[i]t is well-established that some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." *Id.* at 634. "The presence of a delegation clause limits the issues that a court may decide." *Caremark LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022). "[A] valid—i.e., enforceable—delegation clause commits to the arbitrator nearly all challenges to an arbitration provision." *Id.* at 1029.

### III.   DISCUSSION

Defendant argues that Plaintiff's claims are subject to arbitration because Plaintiff agreed to the arbitration provision of Defendant's sales terms when she clicked the "Submit Order" button to purchase the Product. Mot. at 9. Plaintiff argues that a contract was never formed because the design of the Website did not appropriately put her on notice that her purchase of the Product constituted assent to arbitration. Opp'n. at 9. Defendant also argues that Plaintiff is equitably estopped from contesting arbitration because she purchased the Product at a discounted price, and Plaintiff disagrees. Mot. at 20; Opp'n. at 31. Finally, Defendant moves to dismiss Plaintiff's class claims because she cannot represent a class in arbitration and moves to stay the action. Mot. at 23, 24. The Court agrees with Plaintiff and finds that these claims are not subject to arbitration.

25-cv-1890-JES-DEB

**A. Agreement to Arbitrate**

Defendant argues that Plaintiff agreed to arbitration when she clicked "Submit Order" on the Website when buying the Product, because text above the order stated "By submitting my order, I agree to be bound by the terms and policies linked above," and the link above contained terms of services including an agreement to arbitrate. Mot. at 17. Plaintiff argues that the terms were not sufficiently conspicuous to put her on notice that she was assenting to an arbitration clause in the context of the transaction. Opp'n. at 12-16. Under the law governing internet transactions in this Circuit, the weight of authority supports Plaintiff's argument.

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation," including the requirement that "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). In internet contracting, "a manifestation of assent may be inferred from the consumer's actions on the website— including, for example, checking boxes and clicking buttons—but any such action must indicate the parties' assent to the *same thing*, which occurs only when the website puts the consumer on constructive notice of the contractual terms." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021)

Courts have divided internet contract formation into four main categories based upon the mechanism by which the user purportedly manifests assent: browse-wraps, click-wraps, scroll-wraps, and sign-in wraps. *Chabolla v. ClassPass, Inc.*, 129 F. 4th 1147, 1154 (9th Cir. 2025). Courts typically enforce click-wrap transactions, in which the user is presented with terms in a pop-up window and clicks or checks a box to manifest assent to those terms. *Id.* On the other hand, courts typically decline to enforce browse-wrap transactions, in which a website claims that the user has agreed to its terms of use merely by browsing its site. *Id.* Sign-in wrap transactions exist "somewhere in the middle: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Id.*

25-cv-1890-JES-DEB

The parties here agree that the mechanism of purported assent to contract at issue here fits best into the category of "sign-in" wrap. *See* Mot. at 18; Opp'n. at 15. In *Chabolla v. ClassPass, Inc.*, the Ninth Circuit set forth the factors district courts should consider in evaluating whether a sign-in wrap contract is enforceable. 129 F. 4th at 1155. The Court explained that sign-in wrap contracts may be enforceable when (1) the website contains reasonably conspicuous terms of service, considering both the context of the transaction and the visual aspects of the website, and (2) the user unambiguously manifests assent to the terms. *Id.* at 1154-55. The Court analyses these factors below.

## 1. Reasonably Conspicuous Notice of Terms

In determining whether a website has reasonably conspicuous terms, courts look to "[t]he nature of the service or goods offered and the visual aspects of every page of a multi-page transaction[, which] should be considered together." *Chabolla*, 129 F. 4th at 1155.

In evaluating the visual aspects of the website, the key inquiry is "whether an advisal is displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (internal quotation omitted). "Because 'online providers have complete control over the design of their websites,' 'the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (quoting, respectively, *Sellers*, 73 Cal. App. 5th at 444 and *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014)). Evaluating visual elements is "a fact intensive inquiry" in which "even minor differences" can impact the outcome of a case. *Sellers,* 73 Cal. App. 5th at 473. Although this analysis is devoid of checklists or *per se* rules, as the Ninth Circuit has explained, "[a] hefty dose of common sense goes a long way." *Godun*, 135 F.4th at 710.

To determine the impact of design choices on an internet user's awareness of an advisal, courts look to both individual elements and the interaction between the elements on the page. *See id.* at 709. An uncluttered page and an advisal placed close to the action button weigh in favor of finding that a reasonably prudent user would be on notice of an

agreement. *Bender v. Twilio Inc.*, 2025 WL 2308484 at \*3 (N.D. Cal. Aug. 22, 2025). Contrastingly, an advisal in small grey text weighs against finding notice, especially where the advisal is comparatively less noticeable than other items on the page. *See, e.g., Carbonell v. Seatgeek, Inc.*, No. 2:24-CV-2087 JCM (NJK), 2025 WL 2643847, at \*3 (D. Nev. Sept. 15, 2025) ("The line of text is the most unremarkable item on the sign-in pop-up. It is in small, grey font, and located just above a larger, prominent black 'Sign Up' button, thereby de-emphasizing its importance."); *Cruz v. Tapestry, Inc.,* 113 Cal. App. 5th 943, 958 (2025) (explaining that "the white text of the action button is far easier to see than the gray notice text" and "the notice text is less than a quarter of the size of the action button."); *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856–57 (9th Cir. 2022) (explaining that an advisal printed in a "tiny gray font considerably smaller than the font used in the surrounding web elements" was "deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text."). In particular, courts regularly compare the design of the advisal text to the design of the action button that purports to manifest the user's assent to the contract (typically the final step in a process to register for or purchase a service or product). *Id.* Two-column checkout screens, with the product on one side and user information on the other, also weigh against finding notice, because a multi-column design "increases the likelihood that a consumer would miss the notice text included in just one of the two columns." *Cruz*, 113 Cal. App. 5th at 957.

Here, the parties dispute whether the visual elements of the checkout page would have put a reasonably prudent internet user on notice that clicking "Submit Order" constituted assent to a contract. Mot at 11; Opp'n. at 16. Defendant's checkout page contains two columns. ECF No. 17-1. The left column displays clickable text boxes and options for the customer to fill out regarding their purchase. *Id.* The right column displays the item(s) in the customer's "bag," a cost summary, and a brightly colored charity donation display. *Id.* The top of the page is as follows:

25-cv-1890-JES-DEB



*Id.* The user fills out their contact information, checks a box to sign up for promotional emails (in a portion of the Website not reproduced here), then scrolls down to select shipping:

 

*Id.* The user then enters their shipping information and payment information in text boxes below (again not reproduced in this order), then scrolls to the bottom of the page:

7

25-cv-1890-JES-DEB



*Id.* The action button is a blue button which takes up most of the lefthand column and reads, "Submit Order" in a white font. *Id.* Above the button is slightly smaller grey text which reads, "By submitting my order, I agree to be bound by the terms and policies linked above." *Id.* Above that text, in the same size and color of font, are four underlined links, reading "Updated Sales Terms"; "Returns & Exchanges"; "Website Terms of Use"; and "Privacy Policy." *Id.* A user who clicks the "Updated Sales Terms" link would be led to a contract containing an arbitration provision. Mot. at 12. The parties do not dispute that the arbitration provision is binding on Plaintiff's claims if the Updated Sales Terms are enforceable against Plaintiff. *See* Mot. at 12; *see generally* Opp'n.

Defendant correctly argues that the advisal's clear language and its proximity to the action button weigh in favor of finding that it gave reasonably prudent notice to a user. Mot. at 17; *see Bender*, 2025 WL 2308484 at *3. However, as Plaintiff points out, the advisal and the link to the terms are smaller than some of the other text on the page, and are unbolded and grey while some other text is bolded and black. *See* Opp'n. at 19-21; ECF No. 17-1; *Carbonell*, 2025 WL 2643847 at *3; *Cruz,* 113 Cal. App. 5th at 958; *Berman*, 30 F.4th at 856. Additionally, the advisal is much smaller and lower contrast than the action button below it, which some courts have found downplays the importance of the terms to the transaction. *See id.* The links to the policies themselves are underlined, which indicates

25-cv-1890-JES-DEB

they are links, but are the same grey color as the rest of the text. *See* ECF No. 17-1; *c.f.* *Carbonell*, 2025 WL 2643847 at *4 ("Although defendant underlines "Terms of Use," underscoring words or phrases is insufficient to provide notice to reasonably prudent users that there is a clickable link."). The checkout page utilizes a two-column design including a bright advertisement for a charity donation, which adds to the overall visual clutter and increases the chance that the user will not notice the advisal. *See Cruz*, 113 Cal. App. 5th at 957. In summary, the visual elements of Defendant's checkout page weigh slightly but not definitively against finding that a reasonably prudent internet user would have seen the advisal. *See Godun*, 135 F.4th at 710.

The Court does not consider these elements in isolation, however, but views them in the context of the transaction. *Chabolla*, 129 F. 4th at 1155. Following the Ninth Circuit's decision in *Chabolla*, courts in this Circuit distinguish one-off transactions from transactions involving "some kind of continuing relationship … that would require some terms and conditions," on the principle that "user[s] should expect that certain relationships are bound by terms, even if not explicitly told." *Id.* "Generally speaking, courts are more likely to conclude that a user anticipating some sort of continuing relationship would expect to be bound by terms, whereas a user who simply purchases goods or avails herself of a one-time discount offer would be less likely to form such an expectation." *Cody v. Jill Acquisition LLC*, 789 F. Supp. 3d 940, 959 (S.D. Cal. 2025). "Some relevant factors include whether there is a full registration process indicative of an ongoing relationship, whether the service is offered as a free trial, whether the user provides their credit card information, and whether the user downloads a mobile app on their phone (which would suggest consistent accessibility)." *Whalen v. NBA Props., Inc.*, No. 25-CV-01030-CRB, 2025 WL 1948591, at *4 (N.D. Cal. July 16, 2025) (internal quotation omitted).

Here, the transaction was a one-off purchase of a shirt. Compl. ¶ 8. The check-out screen requires the user's payment information, but not a full registration process or an app download. *See* ECF No. 17-1. Plaintiff argues that this context would not give rise to a consumer expectation of an ongoing relationship governed by contractual terms. Opp'n. at

13-14 (citing *Cruz*, 113 Cal. App. 5th at 957). Defendant concedes that a user would have less reason to believe the relationship is bound by terms in a one-time purchase, but argues that the advisal on the website was so clear that the Court should nonetheless find conspicuous notice. Mot. at 18-19.

A recent decision from this District involving a one-off sign-in wrap transaction, *Cody v. Jill Acquisition LLC*, is helpful here. 789 F. Supp. 3d at 947. There, the plaintiff purchased a "Rib Knit Two Way Poncho" in a one-off transaction not requiring a subscription or registration. *Id.* at 944, 947. The Defendant's website contained a grey advisal reading, "By clicking 'Place Order' you agree to J.Jill's Terms of Use and Privacy Policy," directly below a slightly larger blue action button reading "PLACE ORDER." *Id.* The words "Terms of Use" and "Privacy Policy" were blue, underlined hyperlinks, and led to a document purporting to bind users to arbitration. *Id.* The court explained that the visual elements of the website alone weighed in favor of finding reasonably conspicuous notice, but that the context of a one-off purchase of an item of clothing "distinguishe[d] this case from those in which the Ninth Circuit has found that the context of the transaction would put a user on inquiry notice that use of a company's website or services constituted an agreement to its terms and conditions, including an arbitration provision." *Id.* at 960. The court found that the defendant there had not met its burden to show that the notice was sufficiently conspicuous in the context of the transaction. *Id.*

Like in *Cody*, Plaintiff here purchased a single item of clothing, which is a relatively "trivial transaction" in which "most consumers would not expect to be bound by contractual terms." *See id.* (quoting *Sellers*, 73 Cal. App. 5th at 464-65). Defendant's advisal contains fewer indicia of reasonably conspicuous notice than the website at issue in *Cody*, because the advisal itself did not contain the links to the policy and the links were not blue. *See id.* at 959; ECF No. 17-1. The cases Defendant cites upholding similar advisals in one-time purchases are district court cases decided prior to the Ninth Circuit's clarification in *Chabolla* of the importance of continuing relationships to determining the context of the transaction. *See* Mot. at 19 (citing *Karim v. Best Buy Co.*, 2023 U.S. Dist.

25-cv-1890-JES-DEB

LEXIS 96619, at *11 (N.D. Cal. June 2, 2023) and *Allen v. Shutterfly, Inc.*, 2020 U.S. Dist. LEXIS 167910, at *27 (N.D. Cal. Sept. 14, 2020)); *c.f. Chabolla*, 129 F. 4th at 1155. Therefore here, like in *Cody*, the context of the transaction weighs against concluding that the Website provided reasonably conspicuous notice that a user would be subjected to an ongoing contractual relationship including an agreement to arbitrate. *See Cody*, 789 F. Supp. 3d at 960; *see also Chabolla*, 129 F. 4th at 1155 (finding the context of the transaction neutral where a plaintiff made a purchase described as a pass or membership but did not create a username or password and could cancel any time); *Cruz*, 113 Cal. App. 5th at 956-57 (finding that the context weighed against finding notice sufficiently conspicuous where a plaintiff had made multiple transactions and created a customer account).

Considering the factors set forth above, and viewing the evidence in the light most favorable to Plaintiff as the non-moving party, Defendant has not met its burden to establish that the Website provided sufficiently conspicuous notice that purchasing the Product would bind Plaintiff to a contract including arbitration terms. *See Chabolla*, 129 F. 4th at 1155.

### 2. Unambiguous Manifestation of Assent to Terms

When a website "fails to provide reasonably conspicuous notice of the Terms of Use, any action the user takes on the page cannot unambiguously manifest her assent to those terms." *Chabolla*, 129 F. 4th at 1158. Here, as explained above, Defendant's checkout page failed to provide reasonably conspicuous notice of the terms in question. *See* ECF No. 17-1. Therefore, Plaintiff's action of clicking the "Submit Order" button did not constitute unambiguous manifestation of assent to terms as would be required to enforce the agreement to arbitrate. *See Chabolla*, 129 F. 4th at 1158.

Because Defendant has not shown that its website contains reasonably conspicuous terms of service or that Plaintiff unambiguously manifested assent to its terms, the sign-in wrap contract including the agreement to arbitrate is not enforceable. *Id.* at 1154-55. The motion to compel arbitration on the basis of an enforceable agreement is thus **DENIED**.

25-cv-1890-JES-DEB

**B. Equitable Estoppel**

Defendant also argues that Plaintiff's claims are subject to arbitration under equitable estoppel because she purchased an item on clearance and the terms of Defendant's clearance benefits are outlined in the same Updated Sales Terms agreement Plaintiff seeks to enforce. Mot. at 21-22. Plaintiff disagrees, as does the Court. Opp'n. at 31.

California law applies the doctrine of equitable estoppel to contract disputes to prevent a litigant from "assert[ing] claims based on a contract while simultaneously arguing that an arbitration clause in that contract is ineffective." *Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531, 534 (9th Cir. 2020) (internal quotations omitted). However, defendants may not compel arbitration through equitable estoppel when the "plaintiffs' claims flow not from the contracts but from separate statutory requirements" and "are not intimately founded in and intertwined with the contractual terms." *Ford Motor Warranty Cases*, 17 Cal. 5th 1122, 1138 (2025).

Defendant's equitable estoppel argument rests on their contention that "[b]ecause [Plaintiff's] claims seek to enforce the parties' agreement, she cannot repudiate the arbitration provision in that agreement." Mot. at 21. But, as Plaintiff correctly retorts, the complaint raises statutory claims, not claims to enforce the contract itself. *See* Mot. at 32-33; Compl. ¶¶ 30-46. Nor are her claims founded in or intertwined with the terms of Defendant's Updated Sales Terms, as they arise solely from Defendant's representations regarding the Product's price on its public website at the time of her purchase. *See Ford Motor Warranty Cases*, 17 Cal. 5th at 1138. Plaintiff is not seeking to enforce an agreement between the parties or any claim which relies on policies contained in the agreement: instead, she is seeking to enforce what she alleges are Defendant's obligations under California law. *See* Compl. ¶¶ 30-46.

Defendant also argues that Plaintiff benefitted from the Sales Terms which created the clearance price advertised on its website, citing a case in which a plaintiff was bound to an agreement after "knowingly exploiting the agreement and accepting the benefits of

25-cv-1890-JES-DEB

the contract." Mot. at 21 (citing *Montoya v. Comcast Corp.*, 2016 U.S. Dist. LEXIS 130806, at *5 (E.D. Cal. Sep. 22, 2016)). The Court does not agree that the purchase of a discounted consumer good constitutes "knowing exploitation" of a contract, especially where, as here, Defendant did not make the contract sufficiently conspicuous to put Plaintiff on notice that a contract existed at all. *See id.*; Opp'n. at 33.

Because Plaintiff does not bring claims seeking to enforce the Updated Sales Terms, and did not knowingly benefit from them, the doctrine of equitable estoppel does not apply here. *See* Compl. ¶¶ 30-46; *Ford Motor Warranty Cases*, 17 Cal. 5th at 1138. The motion to compel arbitration on equitable estoppel grounds is therefore **DENIED**.

## C. Class Claims and Motion to Stay

Defendant argues that if Plaintiff must arbitrate her dispute, she cannot serve as class representative and this action should be stayed pending arbitration. Mot. at 23-24. As explained above, Plaintiff's claim is not subject to mandatory arbitration. Thus, the motion to dismiss class claims and to stay this action are **DENIED**.

## IV.   CONCLUSION

In conclusion, the Court finds that Plaintiff's claims are not subject to an enforceable arbitration agreement and **DENIES** Defendant's motion to compel arbitration. The Court also **DENIES** Defendant's motion to dismiss the class claims, and **DENIES** Defendant's motion to stay the action.

**IT IS SO ORDERED.**

Dated: March 30, 2025

Honorable James E. Simmons Jr.
United States District Judge

13

25-cv-1890-JES-DEB